(76 App. Div. 118.)

## PEOPLE v. MURRAY.

(Supreme Court, Appellate Division, First Department. November 21, 1902.)

1. EXPLOSIVES—ILLEGAL STORAGE—DUTY OF OFFICERS.

Greater New York Charter, § 763, provides that explosive compounds found illegally stored shall be seized and sold. Section 727 provides that one bureau of the fire department, whose chief shall be the "inspector of combustibles," shall be charged with the execution of all laws relating to the keeping and storage of combustible materials. Section 728 provides that the fire commissioner shall appoint the heads of bureaus and assistants, who shall perform duties assigned them by him. Section 771 empowers any officer or agent of the commissioner "under his direction" to enter buildings and search for combustible materials. Section 731 provides that the fire commissioner is especially charged with the duties of enforcing the provisions of the sections above set out. *Held*, that it was the duty of the inspector of combustibles, when he knew of an illegal storage of dynamite, to seize and confiscate the same, though he had no specific order of the fire commissioner to that effect.

2. SAME—NEGLECT OF DUTY—INDICTMENT—SUFFICIENCY.

An indictment against an officer for willful neglect of duty, in failing to enforce a certain law is not defective for failing to set out the steps which the officer should have taken to enforce the law on knowledge of its violation.

Appeal from trial term, New York county.

George E. Murray was indicted for willful neglect of duty as a public officer. From an order allowing his demurrer to the indictment (76 N. Y. Supp. 373), the people appeal. Reversed.

78 N.Y.S.—46

It is charged in the indictment that from the 1st day of November, 1901, to and including the 27th day of January, 1902, the defendant held the office of inspector of combustibles in the fire department, and, as such, was the principal officer in the bureau of combustibles; that as such officer he "was charged, among other things, with the execution of all laws relating to the storage and use of combustible materials in the city, and with the duty of using and exercising, and causing to be used and exercised, all proper, reasonable, and effective means, and all means within his power as such inspector of combustibles, for carefully observing, examining, and inspecting all places in said city where blasting was being done, and all places therein where any explosive or combustible material or compound was being kept, had, or used, and for repressing and restraining all unlawful having, keeping, and using of such explosive, and for enforcing and preventing violations of the laws of this state relative to the storage, having, keeping, and use of explosive and combustible materials in said city, and of the regulations of the fire commissioner of the city of New York in force in said city relative thereto; and such duty as aforesaid was at all times herein mentioned enjoined by law upon the said George E. Murray, as such public officer and person holding a public employment, and inspector of combustibles as aforesaid"; that during all of this time one Ira A. Shaler, to whom a permit for keeping only 50 pounds of dynamite for blasting purposes on Park avenue between Thirty-Seventh and Forty-First streets, in violation of such permit, kept at such place, for use in blasting, "a quantity of a certain explosive and combustible material, compound, and substance called dynamite" in quantities in excess of the amount allowed and permitted by law, and in excess of 50 pounds, and amounting to 100 pounds and upwards, "all of which he, the said George E. Murray [the defendant] at all the said times then and there well knew"; that there was no regulation prescribed by the fire commissioner permitting the having or keeping at said place of any dynamite in a greater amount or quantity than in said permit prescribed; that the defendant "did unlawfully and willfully wholly neglect and omit to perform the duty so enjoined by law upon him as aforesaid, and did willfully and unlawfully wholly neglect and omit to use and exercise, and to cause to be used and exercised, all proper, reasonable, and effective means, and all means within his power as such inspector of combustibles, for carefully observing, examining, and inspecting the said place within the said city wherein blasting was being done, and the said place therein where said explosive and combustible material and compound was being had, kept, and used, and to cause the same to be carefully observed, examined, and inspected, and then and at all times aforesaid did willfully and unlawfully wholly neglect and omit to repress and restrain, and to cause to be repressed and restrained, such unlawful having, keeping, and using of such explosives, and then and at all the said times did unlawfully and willfully wholly neglect and omit to enforce and prevent the violation of the laws of this state relative to the storage, having, keeping, and using of such combustible material, and the regulations of the fire commissioner of the said city, in force in said city relative thereto, but, on the contrary, then and thereafter and continually to the said 27th day of January, in the said year 1902, at the said borough and county aforesaid, did unlawfully and willfully suffer and permit the said unlawful quantities of dynamite, and the said quantities thereof in excess of the amount allowed and permitted by law as aforesaid to be had and kept at the said place at Park avenue, between Thirty-Seventh and Forty-First streets, in the borough and county aforesaid, without interference on the part of him, the said George E. Murray, as such public officer and person holding a public employment, and inspector of combustibles as aforesaid, and without any proper, reasonable, and effective endeavor on his part toward the prevention thereof, and, without any proper, reasonable, or effective endeavor on his part for the enforcement of and for the prevention of the violation of the laws of this state and the regulations of the fire commissioner in respect to the having, keeping, and using of such dynamite; against the form of the statute in such case made and provided, and against the peace of the people of the state of New York, and their dignity." The demurrer is upon two grounds: First,

that the facts stated do not constitute a crime; and, second, that the indictment does not conform substantially to the requirements of sections 275 and 276 of the Code of Criminal Procedure.

Argued before HATCH, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

Howard S. Gans, for appellant.

A. J. Dittenhoefer, for respondent.

LAUGHLIN, J. The principal contention on the part of the defendant is that no duty devolved upon him in the premises by law until he was required to act by the fire commissioner, and that the indictment does not charge the neglect of any duty to which he was assigned by that official. We deem this proposition untenable. The fire commissioner is the head of the fire department. Section 270, Greater New York Charter. Section 727 of the charter, under which the defendant was appointed inspector of combustibles, provides as follows:

"The fire commissioner shall have power to organize the fire department into such bureaus as may be convenient and necessary for the performance of the duties imposed upon him. One bureau shall be charged with the duty of preventing and extinguishing fires and protecting property from water used at fires, the principal officer of which shall be called the 'Chief of Department.' Another bureau shall be charged with the execution of all laws relating to the storage, sale and use of combustible materials, the principal officer of which shall be called 'Inspector of Combustibles.' The salary of said inspector of combustibles shall be $3,000 a year. Another bureau shall be charged with the investigation of the origin and cause of fires, the principal officers of which shall be called the 'Fire Marshals.' A branch of said bureau shall be located in the borough of Brooklyn."

Section 389 of the Penal Code provides that:

"A person who makes or keeps gunpowder, nitroglycerine or any other explosive or combustible material, within a city or village, * * * in a quantity or manner prohibited by law or by ordinance of the village, is guilty of a misdemeanor."

Section 763 of the charter, so far as here material, provides as follows:

"No person shall manufacture, have, keep, sell or give away any gunpowder, blasting-powder, gun-cotton, nitroglycerine, dualin, or any explosive oils or compounds within the corporate limits of the city of New York, except in the quantities limited, in the manner and upon the conditions herein provided, and under such regulations as the fire commissioner shall prescribe; and said commissioner shall make suitable provision for the storage and safe keeping of gunpowder and other dangerous and explosive compounds or articles enumerated under this title (beyond the interior line of low water mark in the city of New York). The said commissioner may issue licenses to persons desiring to sell gunpowder or any of the articles mentioned under this section at retail, at a particular place in said city to be named in said license (provided that the same shall not be in a building used in any part thereof as a dwelling, unless specifically authorized by said license), and persons so licensed may have on their premises, if actually kept for sale, a quantity not exceeding at any time, of nitroglycerine, five pounds; of gun-cotton, five pounds; of gunpowder, fourteen pounds; blasting powder, twenty-five pounds; and all of said articles shall be put up in tight metallic canisters, containing

or capable of containing, not more than one pound each; and the persons so licensed shall place on some conspicuous part of the front of the stores or buildings in which they may be licensed to sell powder, or any of the articles named under this section, a sign on which shall be distinctly printed, in characters legible to persons passing such stores or buildings, the words 'licensed to sell gunpowder,' or designating such other of the articles herein named as is there offered for sale. * * * All gunpowder, gun-cotton, blasting-powder, dualin, nitroglycerine, or other explosive compound, found in violation of this section shall be forthwith seized and safely stored, and be sold, upon three days' notice to the owner or claimant; and the proceeds of such sale, after deducting all expenses, shall be forfeited and paid over to and for the use and benefit of the relief fund of the fire department of the city of New York."

Under these provisions of law the' facts charged in the indictment clearly show that the dynamite, which is an explosive compound, in so far as it exceeded the quantity authorized by the permit from the fire commissioner, was kept in violation of law, and was subject to seizure, removal, and sale, as prescribed in the last sentence of section 763 of the charter, herein quoted. The indictment charges that the defendant "well knew" that this dynamite was kept on Park avenue, in violation of law, from the 1st day of November, 1901, to and including the 21st day of January, 1902; and it would seem from the provisions of law quoted that it was at least his duty, as head of the bureau of combustibles, which is "charged with the execution of all laws relating to the storage, sale, and use of combustible materials," to confiscate and remove the same to a place of safety. The defendant's contention that he was not required to act without the order and direction of the fire commissioner is based upon sections 728, 731, and 771 of the charter. Section 728 provides that:

"The fire commissioner shall have the power to select heads of bureaus and assistants and as many officers and firemen as may be necessary, and they shall at all times be under the control of the fire commissioner, and shall perform such duties as may be assigned to them by him, and under such names or titles as he may confer."

Section 731, so far as material to the present inquiry, provides that the fire commissioner is "authorized, empowered and especially charged with the duties of enforcing the several provisions of this chapter," which embraces all of the sections of the charter to which reference has been made. Section 771 of the charter provides as follows:

"The commissioner and his officers or agents, under the direction of the commissioner, or either of them, are hereby empowered at any and all times to enter into and examine all buildings, dwelling houses, livery and other stables, hay boats or vessels, and places where any merchandise, gunpowder, hemp, flax, tow, hay, rushes, firewood, boards, shingles, shavings or other combustible materials, may be lodged, for the purpose of ascertaining all violations of any law or ordinance, and also the places where ashes may be deposited, and upon finding that any of them are defective or dangerous, or that a violation of any law or ordinance exists therein, may deliver a written or printed notice, containing a copy of the provisions in reference thereto, and notice of any violation thereof and notice to remove, amend, or secure the same within a period to be fixed therein. And in case of neglect

or refusal on the part of such occupant or of the possessor of such combustible materials or any of them, so to remove, amend, or secure the same within the time and in the manner directed by the said commissioner in such notice, the party offending shall forfeit and pay, in addition to any penalty otherwise imposed, the sum of twenty-five dollars, and the further sum of five dollars for every day's neglect to remove, amend or secure the same after being so notified. All expenses of any removal, alteration or amendment as aforesaid, shall be paid in the first instance by the occupant, but shall be chargeable against the owner of such dwelling house or other building, and shall be deducted from the rent of the same, unless such expense be rendered necessary by the act or default of such occupant, or unless there be a special agreement to the contrary between the parties."

It is difficult to see the object of the legislature in creating a "bureau of combustibles," by section 727 of the charter, if it intended by section 728 to provide that the head and all the subordinates of that bureau might neglect the duty of seeing that the law was observed with reference to the storage, sale, and use of combustible materials, as specifically directed, from time to time, by the commissioner. Manifestly, such was not the intention of the legislature. It was undoubtedly designed by section 728 to confer upon the fire commissioner authority to give such orders and directions to the head of the bureau of combustibles and the employés of that bureau, with reference to the discharge of the duties for which that bureau was created, as, in his judgment, seemed necessary or proper; but the bureau was not created without authority to act until ordered and directed by the fire commissioner. However, whatever authority the fire commissioner may have had over the subordinates of the bureau of combustibles, it was clearly the duty of the head of that bureau to exercise reasonable care and diligence in enforcing the laws relating to the storage, sale, and use of combustible materials. When he knew that dynamite was being stored in violation of law, he needed no order or direction of the fire commissioner, under section 771 of the charter, to enter or examine the place where it was for the purpose of ascertaining "violations of the law." That section was designed to authorize such inspection of the places where combustibles or explosives were kept as might be deemed necessary to insure an observance of the law, where the proper authorities were without knowledge that the law was being actually violated; and it particularly deals with combustibles of such a nature that, without serious damage to the public, a reasonable time for their removal might be given.

It is not essential that we should pass upon the sufficiency of each separate allegation contained in the indictment of a willful neglect of duty by the defendant. If any of these allegations are sufficient to constitute the crime, the indictment is not subject to demurrer. It is, therefore, unnecessary to consider upon this appeal all that has been argued in that regard. It may, however, be observed that it would seem to be the duty of the chief of combustibles, where he has reason to believe that the law is being violated, to promptly investigate, and ascertain, and do the various things, so far as necessary, that are authorized to be done by the charter for the purpose of obviating the danger and safeguarding the public; and, where

access to premises necessary to be examined is denied him for want of authority from the fire commissioner, to apply for such authority. We are of opinion that this indictment contains "a plain and concise statement of the acts constituting the crime, without unnecessary repetition," as required. by section 275 of the Code of Criminal Procedure, and is substantially in the form prescribed by section 276 of that Code. Of course, the duty of making arrests devolves upon the police department; but the duty devolved upon this officer of removing the dynamite when he had knowledge that it was kept in violation of law, and of making an inspection, and to use all due and reasonable diligence in taking the steps prescribed by the charter for securing an observance of the law in regard to the keeping or storage of explosive or combustible materials. The law pointed out the steps that he should take upon knowledge of the facts charged in the indictment, and it was not essential that those steps should be stated in the indictment. His duty was, so far as in his power, acting under the authority conferred upon him by the charter provisions, to see that life and property were not endangered by a violation of the laws relating to the storage, sale, and use of combustible materials; and this the indictment charges he wholly failed and neglected to perform.

It follows, therefore, that the judgment allowing the demurrer to the. indictment was erroneous, and should be reversed, and the demurrer disallowed, with leave to the defendant, at his election, to plead at such time as may be designated by the trial court. All concur.